IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC CENTA | ) | CASE NO. |
| c/o John F. Myers | ) | |
| 234 Portage Trail | ) | JUDGE |
| Cuyahoga Falls, Ohio, 44221 | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Portage County, Ohio | ) | |
| c/o Portage County Board of | ) | |
| Commissioners | ) | |
| 449 South Meridian Street | ) | |
| Ravenna, Ohio 44266 | ) | Complaint for FLSA |
| | ) | Violations, FLSA Retaliation, |
| and | ) | and a Temporary Restraining Order |
| | ) | and Injunctive Relief |
| Portage County Sheriff's Office | ) | |
| 8240 Infirmary Road | ) | |
| Ravenna, Ohio 44266 | ) | (Trial by Jury demanded.) |
| | ) | |
| DEFENDANTS | ) | |

## PARTIES AND JURISDICTION

1. This action is brought by Plaintiff Eric Centa ("Plaintiff") to recover overtime wages earned by him and owed to him by his employer, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), FLSA retaliation in violation of 29 USC§ 215 violations of the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.01 et seq. (the "OMFWSA") and for a Temporary Restraining Order and Injunctive Relief to prevent further acts of retaliation.

2. Plaintiff is a United States citizen and resides in Portage County, Ohio

3.  Defendant Portage County, Ohio is a duly created governmental unit having its administrative offices located at 449 Meridian Street, Ravenna Ohio

4.  Defendant Portage County Sheriff's Office is a department of Portage County

5.  At all relevant times, Plaintiff was employed by Defendants as a Deputy Sheriff in the Portage County Sheriff's Office (PCSO). Plaintiff is an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e)(2)(C), and Defendants are engaged in commerce within the meaning of 29 U.S.C. §§ 206-207 and the OMFWSA, Ohio Rev. Code § 4111.03(D)(3).

**FACTS**

6.  In March 2012, while employed by another police department, Plaintiff was assigned, through the then Portage County Sheriff, David Doak, to the PCSO Drug Unit, now the Portage County Sheriff's Office Drug and Violent Crime Unit. I have served in a plain-clothes investigatory capacity since March 2012.

7.  In December 2013, Plaintiff was hired as a Deputy Sheriff by the PCSO and continued to work for the Drug Unit.

8.  Throughout his entire time at the PCSO, since March 2013, Plaintiff  have served in a plain-clothes investigatory capacity.

9.  On April 1, 2021, Portage County Sheriff Bruce Zuchowski, on behalf of the Portage County Sheriff's Office and Portage County entered into Memorandum of Agreement ("MOA") with a United States law enforcement agency ("Agency") under which PCSO would assign Deputy Sheriffs, on a permanent basis, to the maximum extent possible to assist in federal investigations of Federal, state and local laws.

10. Under the terms of the MOA, the PCSO agreed to remain fully responsible for their

obligations as the employer of the assigned Deputy Sheriff including, payment of overtime earnings, withholdings, insurance coverage, and all other requirements by law, regulations, ordinance or contract regardless of the reimbursable overtime charges incurred. The MOA also provided that the PCSO could seek reimbursement for some of these obligations up to a specific cap. The MOA terminates effective September 30, 2025.

11. On or about March 2021, Sheriff Zuchowski assigned Plaintiff, on a permanent basis, to the Agency under the terms of the MOA. During that time, Plaintiff has worked on a full-time basis with the Agency and additionally have assisted multiple divisions of the Portage County Sheriff's Office in Agency-related types of investigations.

12. Plaintiff has a great number of ongoing matters with the Agency that will require him to work on a full-time basis, including overtime, for at least the next twelve months.

13. On or about April 30, 2025, PCSO renewed the MOU with the Agency that supersedes and extends the term of MOA through September 20, 2029.

14. The work Plaintiff performs for the Agency under the terms of the MOA includes many primary and necessary tasks associated with the investigation and prosecution of various alleged criminal offenses under Federal, state and local laws. He performs these duties along with other assignments given by supervisors who are employed by the Agency.  These tasks require full-time hours as well as a significant amount of overtime, all of which are an integral and indispensable part of his job duties. His involvement in various investigations for the Agency is essential and necessary for the Agency's pursuit of its mission, a mission PCSO agreed to support and fund under the terms of the original MOA and renewed MOU.

15. Due to the nature of the tasks he has been assigned to perform by the Agency, he has worked, and continues to work, to an excess of forty hours per work week, on a regular and recurring basis.

16. While he has been paid by PCSO for the work he has performed under the terms of the MOA, in May 2024, the PCSO failed and refused to pay him a significant amount of overtime and continues to refuse to pay him earned overtime.

17. Currently, the PCSO does pay him for forty hours of work per week that he performs for the Agency, however, PCSO has failed and refused to pay him in excess of $47,000.00 in earned overtime.

18. In or about 2018 when Plaintiff was a part-time Sheriff's Deputy assigned to a Federal Drug Task Force, Defendants failed to pay him some 800 hours of earned overtime. Despite his complaints to the PCSO at that time, the PCSO failed and refused to pay Plaintiff the overtime. After Sheriff Zuchowski was elected, he again complained to Sheriff Zuchowski about not being paid that overtime, but nothing was done to compensate me for the unpaid overtime.

19. PCSO failed to pay for his overtime hours for May 2024. Since May 2024, he has repeatedly, orally and in writing, complained to his supervisor Captain Mike Davis, now Major Mike Davis, in order to discuss and resolve the nonpayment of the May 2024 overtime. Major Davis has failed and refused to discuss the matter with him.

20. In 2025, Plaintiff was paid overtime to the extent it was reimbursed to the PCSO by the Agency under the terms of the MOA. However, when the maximum allowable reimbursement from the Agency was exceeded, in April 2025, Sheriff Zuchowski directed a subordinate Captain to inform Plaintiff, in writing, that the PCSO would not

compensate him for any further overtime he worked for the Agency.  This has placed Plaintiff in a difficult position as the work he is assigned by the Agency regularly involves significant amounts of overtime to perform the integral and indispensable parts of Plaintiff's job duties. See Exhibit C.

21. Since Plaintiff was not paid the overtime in May 2024 and now has not been paid earned overtime since April 2025, he has repeatedly complained to and through his chain of command, including directly to Sheriff Zuchowski, that he was being denied overtime pay for hours worked.

22. Despite repeated complaints, Sheriff Zuchowski has failed and refused to authorize payment of the outstanding overtime pay to Plaintiff.

23. Despite not being paid my earned overtime pay, he continued to perform the duties assigned to him by the Agency, as the tasks assigned in most instances cannot be performed in a traditional 40-hour work week, and the tasks require work to work large amounts of overtime in order to perform my assigned job duties.

24. After Plaintiff began to complain about not being paid overtime, Sheriff Zuchowski, through his subordinates in his chain of command, retaliated against Plaintiff  by ostracizing him from the PCSO.  Plaintiff was removed from his assigned office at the Portage Count Sheriff's Office (including removing all of his personal property that had been gathered in that workspace over some seven years of employment) even though he had active files necessary for the work he was performing for the Agency in a locked file cabinet in his office, failed and refused to provide him any office space at the PCSO,  removed him from text and email chains that are used to notify Portage County Sheriff's Deputies of matters related to their employment, job duties and officer

safety, failed to notify him when the County radios were reprogramed in 2024, forced him to return a weapon and a drone that he needed to perform his job duties with the Agency, refused to provide him with a PCSO issued pistol, excluded him from firearms training and qualification even though he is a certified Firearms Trainer, failed and refused to permit him to attend outside training, and failed to notify him of court dates he is required to attend in Portage County matters.

25. Prior to being ordered to leave his assigned office, on two occasions someone left imitation pieces of excrement on my desk, and at the time he was ordered to remove his belongings from the office, someone erected a flag above his desk with the message "F**K AROUND AND FIND OUT" emblazoned on the flag.

26. Plaintiff has also been informed that certain employee[s] of the PCSO have told employee[s] of the Portage County Prosecutor's Office he is not truthful. Such comments will harm his reputation in the community.

27. All of these acts and omission constitute acts of retaliation for his complaints about not being paid his earned overtime pay.

28. On July 21, 2025, he received a formal directive ordering him to cease and desist from making any negative or disparaging comments about the PCSO.  He is not aware of any such disparaging comments he has made. While Plaintiff recalls making comments to an outside law enforcement agency, the comments were not negative or disparaging but were made in the course of carrying out his job duties as assigned by the Federal Agency. This action by Defendants was another calculated act of retaliation against him for his complaints about not being paid earned overtime hours he worked.

29. On July 21, 2025, in a further act of retaliation on account of his complaints about not

being paid for earned overtime, PCSO ordered that effective September 15, 2025, Plaintiff will be reassigned from the Agency to the uniformed ranks of the PCSO to a security position in the Portage County Courthouse due to "operational needs".

30. Plaintiff has never worked in the uniformed ranks at the PCSO. He has always worked in plain clothes investigatory roles. Plaintiff contends this reassignment is yet another act of retaliation on account of his complaints about not being paid for his earned overtime hours and is pretextual.

31. In August and September 2025, the Agency had discussions with Sheriff Zuchowski about Plaintiff's case work at the Agency. Sheriff Zuchowski was informed that Plaintiff is obligated to continue his work on the ongoing matters that comprise his case work even after he is reassigned from the Agency.   Despite the express terms of the MOA and MOU and the Agency's efforts to keep Plaintiff in his role under the MOA and MOU, Sheriff Zuchowski has refused to leave Plaintiff in that role and  has revoked Plaintiff's assignment to the Agency. Due to the number of matters Plaintiff is currently working on for the Agency, the Agency informed him that despite the reassignment to the uniformed ranks of the PCSO, Plaintiff will be subpoenaed for ongoing judicial hearings and trials  to work on the matters he is currently responsible for as the primary case agent through his work with the Agency.

32. The manner in which Plaintiff has been treated and continues to be treated has caused him severe emotional distress. While this does not affect his ability to perform the essential functions of his job duties with the Agency, he is concerned he will be subjected to further acts of retaliation by his chain of command at the PCSO when he is  reassigned to the uniformed ranks of the PCSO.

33. Plaintiff has not engaged in any violations of PCSO policies and procedures, nor has he engaged in any conduct through his work with the Agency that has resulted in any counselling or discipline. The numerous and repeated acts of retaliation he has been subjected to, including the reassignment to the uniformed ranks, are all on account of his complaints that the PCSO has not paid him a significant amount of earned overtime through his  work with the Agency.

34. Defendants knowingly, willfully and wantonly have failed and refused to pay Plaintiff overtime wages during his employment.

35. Despite attempts by the Agency to reason with Sheriff Zuchowski that the needs of the Agency require Plaintiff to continue to work on his ongoing matters, Sheriff Zuchowski has refused to and revoked Plaintiff's assignment to the Agency, despite the express terms of the MOA and MOU.

## COUNT I
### (Violation of the Fair Labor Standards Act)

36. Plaintiff re-alleges all prior paragraphs and incorporates them here by reference.

37. Defendants' practice and policy of not paying Plaintiff overtime compensation at a rate of one and one-half times his regular rate of pay for the hours he worked in excess of 40 hours in a work week  violated the FLSA, 29 U.S.C. §§ 201-219.

38. As a result of Defendants' knowing and willful practices and policies all in violation of the FLSA, Plaintiff has been damaged in that he has not received and continues not to receive wages due him under the terms of the  FLSA.

39. Because Defendants have violated the provisions of the FLSA as set forth above, Defendants are liable to Plaintiff for overtime pay at the rate of one- and one-half times his hourly rate for each hour worked in excess of forty hours per work week for the

three-year period immediately preceding the filing of this lawsuit, liquidated damages, attorney fees, and costs of suit.

## COUNT II
## (FLSA Retaliation)

**40.** The foregoing allegations are incorporated herein by reference.

**41.** 29 U.S.C. §215(a)(3) bars employers from retaliating against an employee who complains about unlawful activity.

**42.** Beginning in May 2024, Plaintiff repeatedly engaged in protected activity under the terms of the FLSA by complaining through his chain of command and demanding that he be compensated for all overtime hours he has and continues to work.

**43.** After Plaintiff began to complain about not being paid overtime, Sheriff Zuchowski, through his subordinates in his chain of command, retaliated against Plaintiff by ostracizing him from the PCSO. Plaintiff was removed from his assigned office at the Portage Count Sheriff's Office (including removing all of his personal property that had been gathered in that workspace over some seven years of employment) even though he had active files necessary for the work he was performing for the Agency in a locked file cabinet in his office, failed and refused to provide him any office space at the PCSO, removed him from text and email chains that are used to notify Portage County Sheriff's Deputies of matters related to their employment, job duties and officer safety, failed to notify him when the County radios were reprogramed in 2024, forced him to return a weapon and a drone that he needed to perform his job duties with the Agency, refused to provide him with a PCSO issued pistol, excluded him from firearms training and qualification even though he is a certified Firearms Trainer, failed and refused to permit him to attend outside training, and failed to notify him of court dates

he is required to attend in Portage County matters.

44. Prior to being ordered to leave his assigned office, on two occasions someone left imitation pieces of excrement on my desk, and at the time he was ordered to remove his belongings from the office, someone erected a flag above his desk with the message "F**K AROUND AND FIND OUT" emblazoned on the flag.

45. Plaintiff has also been informed that certain employee[s] of the PCSO have told employee[s] of the Portage County Prosecutor's Office he is not truthful. Such comments will harm his reputation in the community.

46. All of these acts and omission constitute acts of retaliation for his complaints about not being paid his earned overtime pay.

47. On July 21, 2025, he received a formal directive ordering him to cease and desist from making any negative or disparaging comments about the PCSO.  He is not aware of any such disparaging comments he has made. While Plaintiff recalls making comments to an outside law enforcement agency, the comments were not negative or disparaging but were made in the course of carrying out his job duties as assigned by the Federal Agency. This action by Defendants was another calculated act of retaliation against him for his complaints about not being paid earned overtime hours he worked.

48. On July 21, 2025, in a further act of retaliation on account of his complaints about not being paid for earned overtime, PCSO ordered that effective September 15, 2025, Plaintiff will be reassigned from the Agency to the uniformed ranks of the PCSO to a security position in the Portage County Courthouse due to "operational needs".

49. . Plaintiff has never worked in the uniformed ranks at the PCSO. He has always worked in plain clothes investigatory roles. Plaintiff contends this reassignment is yet another

act of retaliation on account of his complaints about not being paid for his earned overtime hours and is pretextual.

50. In August and September 2025, the Agency had discussions with Sheriff Zuchowski about Plaintiff's case work at the Agency. Sheriff Zuchowski was informed that Plaintiff is obligated to continue his work on the ongoing matters that comprise his case work even after he is reassigned from the Agency.   Despite the express terms of the MOA and MOU and the Agency's efforts to keep Plaintiff in his role under the MOA and MOU, Sheriff Zuchowski has refused to leave Plaintiff in that role and  has revoked Plaintiff's assignment to the Agency. Due to the number of matters Plaintiff is currently working on for the Agency, the Agency informed him that despite the reassignment to the uniformed ranks of the PCSO, Plaintiff will be subpoenaed for ongoing judicial hearings and trials  to work on the matters he is currently responsible for as the primary case agent through his work with the Agency.

51. The manner in which Plaintiff has been treated has caused him severe emotional distress. While this does not affect his ability to perform the essential functions of his job duties with the Agency, he is concerned he will be subjected to further acts of retaliation by his chain of command at the PCSO when he is   reassigned to the uniformed ranks of the PCSO.

52. Plaintiff has not engaged in any violations of PCSO policies and procedures, nor has he engaged in any conduct through his work with the Agency that has resulted in any counselling or discipline. The numerous and repeated acts of retaliation he has been subjected to, including the reassignment to the uniformed ranks, are all on account of his complaints that the PCSO has not psid the significant amount of earned overtime

he has earned through his  work with the Agency.

53.  Defendants' willful and intentional refusal to pay overtime, with full knowledge that Plaintiff is required to work overtime to fulfill his job duties with the Agency, together with the aforementioned acts of striping Plaintiff of the benefits of employment afforded other Sheriff's Deputies who have not engaged in protected activity all demonstrate that Defendants have and continue to retaliate against Plaintiff on account of his protected activity all demonstrate that Defendant continue to retaliate against Plaintiff on account of his protected activity.

54. The manner in which Plaintiff has been treated and continues to be treated has caused him severe emotional distress. While this does not affect his ability to perform the essential functions of his job duties with the Agency, he is concerned he will be subjected to further acts of retaliation by his chain of command at the PCSO when he is  reassigned to the uniformed ranks of the PCSO.

55. Because Defendants have violated the provisions of the FLSA by knowingly and willfully retaliating against Plaintiff on account of his protected activity under the FLSA as set forth above, Defendants are liable to Plaintiff for overtime pay at the rate of one- and one-half times his hourly rate for each hour worked in excess of forty hours per work week for the three-year period immediately preceding the filing of this lawsuit, liquidated damages, compensatory damages for emotional distress, liquidated damages, punitive damages, attorney fees, and costs of this action.

## COUNT III
### (Violation of The Ohio Minimum Fair Wages Standards Act)

56. Plaintiff incorporates the foregoing paragraphs as if fully rewritten herein.

57. Plaintiff brings this claim to recover unpaid overtime compensation under the

provisions of the OMFWSA, as codified at Ohio Rev. Code, § 4111.03 and § 4111.10.

58. At all times relevant, Defendants were an employer covered by the Ohio overtime compensation statute, O.R.C. §4111.03.

59. Defendants have failed and refused to fully compensate Plaintiff for all of the overtime hours he worked, recorded and submitted on his weekly time sheets, and then after he repeatedly complained, ordered Plaintiff not to turn in his overtime hours with his weekly time sheets.

60. The acts of which Plaintiff complains are also in violation of the provisions of the OMFWSA, codified at ORC § 4111.03 and § 4111.10.

61. Defendants' failure and refusal to keep records of all of the hours worked each workday and the total hours worked each work week by Plaintiff violates the provisions of the OMFWSA, as codified at ORC § 4111.03.

62. The acts and omissions of the Defendnats constitute violations of O.R.C. §2921.45 (Interfering with Civil Rights) in that Sheriff Zuchowski, other managers, and supervisors of the Defendants, as public servants, acted under color of their office, employment, or authority, have and continued to knowingly deprive, conspire, and attempt to deprive Plaintiff of his state and federal statutory rights to be paid for earned overtime and to be free from retaliation for having engaged in activity to secure the payment of the earned overtime compensation.

63. As a result of Defendants' knowing and willful practices and policies all in violation of the OMFWSA, Plaintiff has been damaged in that he has not received overtime wages due to him pursuant to the OMFWSA.

64. Defendants' acts and omissions constitute violations of O.R.C. §§4111.03 which have

injured Plaintiff, as such Defendants are "liable to the employee[s] affected for the full amount of the overtime wage rate, less any amount actually paid to the employee[s] by the employer, and for costs and reasonable attorney's fees as may be allowed by the court."

## COUNT IV
## (Violation of The Ohio Prompt Pay Act)

65.  Plaintiff incorporates the foregoing paragraphs as if fully rewritten herein.

66. The OPPA, as codified at Ohio Rev. Code § 4113.15, requires that all wages due and owing be paid by the employer within the time period specified therein.

67. The OPPA, as codified at Ohio Rev. Code § 4113.15(B), also makes an employer who fails to make wage payments for 30 days beyond the regularly scheduled pay day or, where no regularly scheduled pay day is applicable, for 60 days beyond the filing of a claim, liable for liquidated damages in an amount equal to 6% of the amount of the wages still unpaid and in contest or disputed, or $200.00, whichever is greater.

68. Defendants did knowingly and willfully fail and refuse to pay Plaintiff for all the work he performed as required by the OPPA. .

69. Defendants are liable to Plaintiff for all unpaid wages.

70. Defendants are additionally liable for liquidated damages and other damages to be proven at the trial of this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Eric Centa requests judgment in his favor against Defendants: and provide the following relief:

(a) An injunction issued pursuant to 29 USC§ 17 permanently restraining Defendants, their officers, agents, servants, employees, successors, and those persons in active concert or

participation with Defendants, from violations of 29 USC§ 15(a)(3) including harming or making any threats of harm to any employee, including Plaintiff, or former employee, or their family members or threatening to terminate any employee because of their protected activity; withholding wages or threatening to withhold wages, intimidating, coercing or threatening, retaliating or discriminating against any employee or former employee in any other way, to prevent current or former employees from complaining about wage violations.

(b) A declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 et seq;

(c) As to Count I, a judgement for Plaintiff for unpaid wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b), reasonable attorney's fees, and the costs and expenses of this action, and for such other legal and equitable relief including, but not limited to, any  injunctive and/or declaratory relief, to which he may be entitled;

(d) As to Count II, a judgment in an amount to be determined at trial, plus  prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment, all non-monetary and/or compensatory damages, including, but not limited to, compensation for his mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering, plus an additional equal amount in liquidated damages;

(e)  As to Count III, judgement for Plaintiff in the amount of his respective unpaid compensation and benefits and prejudgment interest, pursuant to the OMFWSA, and

ORC §§ 4111.03 and 4111.10, an award of reasonable attorney's fees and the costs and expenses of this action and such other legal and equitable relief, including, but not limited to any injunctive and/or declaratory relief to which he may be entitled;

(f)     As to Count IV, judgment for Plaintiff in an amount of all unpaid wages due and owing pursuant to the OPPA and Ohio Rev. Code § 4113.15, et seq., together with liquidated damages, and attorney's fees; and such other legal and equitable relief including, but not limited to, any injunctive and/or declaratory relief, to which he may be entitled;

(g) An award of pre-judgment and post-judgment interest as provided by law; and

(h) Such other and further relief that this Court deems appropriate.

Respectfully submitted,

s/ John F. Myers
John F. Myers (0032779)
234 Portage Trail
Cuyahoga Falls, Ohio 44221
330-819-3695
johnmyerscolpa@gmail.com
Attorney for Plaintiff Eric Centa

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a  trial by jury on all issues so triable.

s/ John F. Myers
John F. Myers
(0032779)
Attorney for Plaintiff Eric Centa